### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SHARYN ALGOOD, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0992 |
| | § | |
| HENRY M. PAULSON, JR., | § | |
| SECRETARY OF THE TREASURY, | § | |
| INTERNAL REVENUE SERVICE, | § | |
|     Defendant. | § | |

### MEMORANDUM AND ORDER

Pending before the Court in this employment discrimination case is a Motion for Dismissal for Lack of Subject Matter Jurisdiction and Summary Judgment [Doc. # 19] ("Motion") filed by Defendant Henry M. Paulson, Jr., Secretary of the United States Department of the Treasury, Internal Revenue Service. Plaintiff Sharyn Algood ("Algood") has responded [Doc. # 20], and Defendant has replied [Doc. # 21]. Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Defendant's motion should be **granted in part** and **denied in part** in accordance with this Memorandum and Order.

### I.    BACKGROUND

During the relevant period, Plaintiff was employed by the Internal Revenue Service ("IRS") as a Supervisory Contact Representative, a first-level manager position, at the IRS's call-center in Houston, Texas.[1]  Plaintiff's direct supervisor was Department Manager, Yvonne Smith ("Smith").  Plaintiff's second-level supervisor was Operations Manager, Arbadella Thomas ("Thomas").

Plaintiff alleges that on July 6, 2004, she requested a meeting with Smith and Field Director Charles Washington to discuss what Plaintiff perceived to be a hostile work environment under her manager Smith.[2]  Smith advised Plaintiff that she was required to submit the request directly to Smith in writing, and apparently Plaintiff did so.  Plaintiff alleges that her working relationship with Smith deteriorated following Plaintiff's request for a meeting.

---

[1]     Defendant terminated Plaintiff's employment on March 3, 2006 as part of a reduction-in-force plan that included closing the Houston call-center.  Plaintiff does not allege that the termination of her employment *per se* was in violation of Title VII.

[2]     In support of this allegation, Plaintiff directs the Court to an exhibit she refers to as "The Request Meeting with Charles Washington," Attachment 1 to Exh. 1 to Plaintiff's Response [Doc. # 20], and which she contends is a "meeting request." This document is undated, unsigned, and does not contain any language requesting a meeting.  The document is titled "Meeting with Yvonne Smith & Impartial Third Party (Charles Washington)."   The Court is unable to determine whether this document is simply a list of Plaintiff's complaints that she planned to raise at a meeting or whether the document contains her notes of a meeting that actually took place. In any event, Defendant has not challenged that Plaintiff did in fact request this meeting.  The Court accordingly assumes that Plaintiff did make a meeting request to Smith on July 6, 2004.

On August 10, 2004, Plaintiff's immediate subordinate, Faustine Moore ("Moore"), filed a grievance with the National Treasury Employees Union ("NTEU") against Plaintiff for verbal abuse.  Eight days later, on August 18, 2004, Plaintiff received notice from Thomas of a proposed three-day disciplinary suspension.  The proposed suspension alleged that Plaintiff engaged in conduct unbecoming an IRS employee by making inappropriate comments toward Moore, engaging in actions that appeared to be retaliatory against Moore, and failing to timely comply with a management directive from Smith to remove two employees from the IRS email system.  Plaintiff contested the proposed suspension in writing on September 10, 2004.  On September 28, 2004, Thomas issued a final notice of suspension sustaining the allegations in the proposed suspension and suspending Plaintiff from duty and pay for a period of three days starting November 2, 2004.

Meanwhile, on August 31, 2004, Plaintiff contacted an EEO counselor regarding the issues Plaintiff claims she raised in her July 6, 2004, meeting request.  On October 27, 2004, Plaintiff filed a formal EEO complaint against the IRS (the "2004 EEO complaint").[3]  Plaintiff's 2004 EEO complaint alleged that she had suffered race discrimination and that the notice of proposed suspension was issued in retaliation for her attempt to set up a meeting with Washington to address her hostile

---

[3]      Plaintiff's 2004 EEO complaint was assigned the case number 05-2055.

work environment claims.   In January 2005, Plaintiff amended her 2004 EEO complaint to withdraw the race discrimination claim.   On January 30, 2006, the administrative judge in charge of Plaintiff's 2004 EEO complaint, Judge Tony Guillory, issued a decision finding that the IRS had not retaliated against Plaintiff. Plaintiff did not appeal this decision.

While Plaintiff's 2004 EEO complaint was pending, further incidents occurred. Plaintiff complains of various instances of mistreatment, described as necessary below.  The mistreatment culminated in a March 10, 2005 notice of a fourteen-day disciplinary suspension.  The proposed suspension alleged that Plaintiff had failed to follow managerial directives when she spoke with Moore regarding Moore's then pending NTEU grievance and by failing to appropriately respond to the NTEU allegations as requested by Smith.  The proposed suspension also alleged that Plaintiff made inaccurate or misleading statements on a matter of official interest regarding Moore's NTEU grievance.[4]  On April 29, 2005, Plaintiff made an oral and written

---

[4]     Specifically, the proposed suspension alleged in regard to the second reason that:

> You provided your manager with a written statement, dated November 14, 2005, regarding allegations from NTEU.  In that written statement you said that during a staff meeting on October 28, 2004: "Yvonne Smith reaffirmed the reason for the movement of managers which was due to the settlement of a grievance."  Ms. Smith did not make that statement.  In fact the staff meeting was on October 26, 2004, and Ms. Smith informed you that the grievance was not the reason for the
>
> (continued...)

reply contesting the proposed suspension.  On June 2, 2005, Thomas issued a final

notice of suspension sustaining the allegations in the proposed suspension notice and

suspending Plaintiff from duty and pay for a period of five days starting July 11,

2005.[5]

On June 15, 2005, Plaintiff wrote a letter to Judge Guillory seeking to amend

her pending 2004 EEO complaint to include the June 2005 suspension.  The IRS

responded in opposition.  On January 30, 2006, Judge Guillory denied Plaintiff's

request, finding that the June 2005 suspension "is not like or related to the issues

---

[4]      (...continued)
                 realignment of the managers.

The proposed suspension further alleged that:

        You provided your manager with a written statement, dated November
        14, 2005, regarding allegations from NTEU.  In that written statement
        you said that during a staff meeting on October 28, 2004: "Yvonne
        Smith stated that if the employee came to her and withdrew her
        grievance and indicated she could work with me then the move would
        not have to take place."  Ms. Smith did not make that statement.  In
        fact, the staff meeting was on October 26, 2004, and Ms. Smith
        informed you that the grievance was not the reason for the realignment
        of the managers.

March 2005 Proposed Notice of Suspension, Exh. D to Defendant's Motion [Doc.
# 16], at 2.

[5]      Plaintiff served the suspension in July 2005.  It was the subject of a final notice issued
to Plaintiff in June 2005.  The parties and the administrative judges accordingly refer
to this discipline as the "June 2005 suspension."  For the sake of clarity, the Court
therefore refers to this suspension as the "June 2005 suspension."

involved in the [2004 EEO] complaint."[6]   Judge Guillory did, however, order the Department of the Treasury to "investigate the issue of whether [Plaintiff] was discriminated against or subjected to a hostile work environment based upon reprisal (prior EEO activity) when she was issued a 14-day suspension on June 2, 2005."[7] This inquiry ultimately became the subject of a new EEO proceeding, EEO Case No. 06-2219 (the "2006 EEO case").   On March 15, 2006, the Department of the Treasury EEO Office sent Plaintiff a notice plainly referencing Case No. 06-2219 and accepting the following issue for processing:   "Was [Plaintiff] subjected to a hostile work environment based on reprisal for her involvement in the EEO process when on June 2, 2005, she was issued a 14-day suspension?"[8]

On March 28, 2006, EEO investigator Kenneth Rau was assigned to investigate the claims in Plaintiff's 2006 EEO case.  A second administrative judge, Judge Mona Read, was assigned to preside.  After some effort at informal resolution,[9] Judge Read and held an evidentiary hearing on June 5, 2007.  On June 18, 2007, Judge Read

---

[6]     Order Denying Amendment and Order to Investigate, Exh. N to Defendant's Motion [Doc. # 16].

[7]     *Id.*

[8]     TD Case Number 06-2219 Acceptance for Processing, Exh. P to Defendant's Motion, dated March 15, 2006 [Doc. # 16] ("March 15, 2006 EEO Letter"), at 1.  This letter also was attached to Plaintiff's Complaint [Doc. # 1] as Exh. 2.

[9]     Bench Decision, Exhibit R to Defendant's Exhibits to Motion for Summary Judgment [Doc. # 16] ("Bench Decision"), at 2.

issued a decision dictated from the bench finding that the IRS had not retaliated against Plaintiff based on or by imposing the June 2005 suspension as reprisal for prior EEO activity.[10]  Plaintiff appealed this decision to the EEO's Office of Federal Operations ("OFO").  On December 28, 2007, the OFO affirmed the administrative judge's finding that there had been no retaliation in regard to the June 2005 suspension.

On March 31, 2008, Plaintiff timely filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII").  Plaintiff's Original Complaint [Doc. # 1] alleged race discrimination, retaliation based on her filing an Equal Employment Opportunity ("EEO") complaint in 2004, and a hostile work environment.  Plaintiff has since expressly abandoned her race discrimination claim.[11]

## II.   <u>ADMINISTRATIVE EXHAUSTION</u>

Defendant argues that Plaintiff has failed to properly administratively exhaust her claim in her 2006 EEO case, which was defined in the March 15, 2006 EEO Letter to complain about exclusively the June 2005 suspension, because she failed to initiate

---

[10]   The opinion references in a couple of places the term "hostile work environment" but substantively considers the allegedly hostile conduct other than the June 2005 suspension only in the context of a retaliation claim, as suggested by the issue as framed by the parties in the March 15, 2006 EEO Letter, at 1.  The judge's conclusion was restricted to the retaliation theory.  *See* Bench Decision, at 23.

[11]   Plaintiff's Response [Doc. # 20], at 6.

EEO counseling and failed to initiate the administrative proceeding with a formal EEO complaint. Federal employees may seek relief under Title VII in federal district court. 42 U.S.C. § 2000e-16(c); *see also Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2005). "As a precondition to seeking this judicial relief, however, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." *Pacheco*, 448 F.3d at 788. The EEO complaint process provides that an employee "must consult an [EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). The purpose of requiring this counseling is to "trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788–89. In order to satisfy this purpose, a defendant employer must be placed on notice of the claims raised against it. If counseling does not successfully resolve the complaint within thirty days, the EEO Counselor must inform the complainant of the right to file a discrimination complaint. 29 C.F.R. § 1614.105(d). If the complainant wishes to proceed, complainant must file a complaint with the agency that allegedly discriminated against her. *Id.* § 1614.106(a). The agency must then acknowledge the receipt of the complaint in writing. *Id.* § 1614.106(e).

Defendant argues that Plaintiff failed to exhaust any claim in the 2006 EEO case because she did not initiate contact with an EEO counselor and thus did not go through the mediation process, and also because she did not file a formal EEO "complaint." It is true that Plaintiff did not take these formal steps in connection with the 2006 EEO case.[12] Plaintiff, however, adequately satisfied the purposes of the counseling and formal complaint requirement. Plaintiff informed Administrative Judge Guillory, who was presiding over her 2004 EEO complaint, in writing with notice to Defendant that she sought to amend her 2004 complaint to include her June 2005 suspension. Defendant opposed this amendment. Defendant thus clearly was on notice of Plaintiff's grievance about her June 2005 suspension.

Judge Guillory ordered the Department of the Treasury to investigate whether Plaintiff was discriminated or retaliated against when the June 2005 suspension was imposed.[13] The issue thus was framed for administrative review purposes, just as a complaint by an aggrieved employee is designed to do. The Department of the Treasury thereafter notified Plaintiff and Defendant in the March 15, 2006, letter that it had accepted for processing and investigation simply the issue of whether Plaintiff was "subjected to a hostile work environment based on reprisal for her involvement

---

[12]     *See* Plaintiff's Response [Doc. # 20], at 6–9.

[13]     Order Denying Amendment and Order to Investigate, Exh. N to Defendant's Motion [Doc. # 16].

in the EEO process when on June 2, 2005, she was issued a 14-day suspension?"[14] This letter also informed Plaintiff that if she disagreed with the proposed claim to be investigated, she must notify Defendant in writing within 15 days or it "will assume that you agree with the claim(s) and will proceed with the investigation of the complaint."[15]  Plaintiff did not inform Defendant of any disagreement.  Thus, Defendant was fully aware of the EEO issue before the agency.

A Department of the Treasury EEO Investigator investigated the claim.[16] Judge Read, the administrative judge in charge of Plaintiff's 2006 EEO case, convened the parties for an evidentiary hearing on June 5, 2007.  She stated that she had unsuccessfully attempted informal resolution with the parties.   Both Plaintiff and Defendant thereafter participated fully in the evidentiary hearing.

On June 18, 2007, Judge Read issued a reasoned bench decision.  She found that Plaintiff had not been retaliated against when the June 2005 suspension was imposed.  Plaintiff appealed this decision to the OFO, which ultimately affirmed the finding of no retaliation.

---

[14]     March 15, 2006 EEO Letter, at 1.

[15]     *Id.*

[16]     Investigative File of Kenneth Rau, Exh. Q to Defendant's Motion [Doc. # 16].

While the manner by which Plaintiff initiated the 2006 EEO case was unorthodox, the process fully satisfied the purposes of administrative agency review. Defendant had ample notice of Plaintiff's grievance, the matter was investigated based on the issue Plaintiff agreed she intended to raise, and Defendant had a full opportunity to respond fully and did so. There was an attempt at informal resolution. The lack of a "mediation" or some form of conciliation in the circumstances at bar are immaterial. Plaintiff and Defendant already were engaged in related administrative proceedings and had earlier unsuccessfully engaged in counseling or other conciliation processes. The Court concludes that Plaintiff has fully administratively exhausted her retaliation claim based on the June 2005 suspension.

## III.   SUMMARY JUDGMENT LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prod., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## IV.   ANALYSIS

### A.   Plaintiff's Unlawful Retaliation Claim

Plaintiff alleges that Defendant retaliated against her in violation of Title VII for filing her 2004 EEO complaint when Defendant imposed the June 2005 suspension.[17]  Title VII, 42 U.S.C. § 2000e-3(a), prohibits retaliation by employers when employees exercise rights protected by Title VII.  Section 2000e-3(a) provides that an employer may not "discriminate" against any employee because the employee has "opposed any practice made an unlawful employment practice [under Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]."  Unlawful retaliation under Title VII may be established through direct or circumstantial evidence.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  Because Plaintiff offers no direct evidence, her claim is analyzed using the test set forth in *McDonnell Douglas Corp.*

---

[17]     Plaintiff's Complaint and her argument in response to Defendant's summary judgment motion contain allegations regarding the denial of a "C-TAP letter" and other allegedly hostile or retaliatory conduct by Smith.  These alleged wrongful acts all occurred before the issue in the 2006 EEO case was framed by the March 15, 2006 EEO Letter, and well before the June 2007 administrative hearing and bench decision on that 2006 EEO complaint.  There is no evidence, however, that Plaintiff informed Defendant or the administrative judge that she sought relief for Defendant's 2004-2005 acts other than the June 2005 suspension.  Accordingly, any relief Plaintiff now seeks arising specifically from the earlier alleged conduct has not been exhausted at the administrative level and is not properly before the Court in this case. *See Pacheco*, 448 F.3d at 788; March 15, 2006 EEO Letter.

*v. Green*, 411 U.S. 7892, 802 (1973).  *See McCoy*, 492 F.3d at 556.   Under the

*McDonnell Douglas* burden shifting test, Plaintiff must first establish a *prima facie*

case of retaliation.   To establish a *prima facie* case of retaliation, Plaintiff must show

that: "(1) she participated in an activity protected by Title VII; (2) her employer took

an adverse employment action against her; and (3) a causal connection exists between

the protected activity and the materially adverse action."  *Aryain v. Wal-Mart Stores*

*Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).   If Plaintiff establishes her *prima facie*

case, the burden shifts to Defendant to articulate a legitimate, nonretaliatory reason

for its employment action.  *Id.*  If Defendant meets this burden, the burden shifts back

to Plaintiff to prove that Defendant's articulated reason is a pretext for the actual

retaliatory reason.  *Id.*

### 1.    Plaintiff's *Prima Facie* Case

Defendant does not dispute that Plaintiff has established the first two elements

of her *prima facie* case.  Plaintiff participated in a protected activity when she sought

EEO counseling in August 2004 and when she filed her 2004 EEO complaint in late

October 2004.  Plaintiff was subjected to an adverse employment action when she was

suspended on June 2, 2005.  *See LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d

383, 390 (5th Cir. 2007) (holding that a two day suspension without pay constitutes

an adverse employment action because it might have dissuaded a reasonable employee from making a charge of discrimination).

Defendant argues that Plaintiff cannot establish the third element of her *prima facie* case because she cannot establish a causal connection between the protected activity and the June 2005 suspension.  The burden of establishing this "causal link" element of a *prima facie* case is much less onerous than the standard for proving "but-for" causation required for the determination of the ultimate issue of retaliation. *See Ackel v. Nat'l Commc'n, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir.1998).  "[A] plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) (citing *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 857 n.12 (5th Cir. 1982)).  However, Plaintiff must produce some evidence of a causal link between her protected activity and the adverse employment action. *Ackel*, 339 F.3d at 385; *see also Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) ("A 'causal link' is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity . . . [such as where] the plaintiff shows

that the employment decision and [her] protected activity were not wholly unrelated."
(internal citations omitted)).

Plaintiff has not produced any "direct" evidence demonstrating that the June 2005 suspension was caused by, *i.e.*, was based in part on, Plaintiff filing her 2004 EEO complaint.  Plaintiff, however, has presented some circumstantial evidence, described below, that a retaliatory motive may have been one of several reasons for Smith's conduct giving rise to the June 2005 suspension, the Court deems Plaintiff to have satisfied the causation element of her *prima facie* case.  The Court therefore turns to the rest of the *McDonnell Douglas* test for retaliation.

### 2.    Defendant's Legitimate Nonretaliatory Reason

Defendant has articulated a legitimate, nonretaliatory reasons for its employment action of the June 2005 suspension of Plaintiff.  Defendant points to the reasons stated in the notice of proposed suspension dated March 10, 2005, and signed by Thomas.  Specifically, Defendant stated in March 2005 and still argues that Plaintiff was suspended because she failed to follow a managerial directive, namely, that—in violation of her own manager's (Smith's) directive not to discuss the issues raised in Moore's grievance—Plaintiff had a discussion with Moore on October 19, 2004, about the grievance and, on October 28, 2004, informed Moore "that if she withdrew her grievance and indicated she could work with [Plaintiff] then the

reassignment of managers would not have to take place.  The notice of proposed

suspension also cited Plaintiff for refusing to follow a managerial directive to provide

a written response to the allegations in Moore's grievance.  Further, the notice stated

that Plaintiff made inaccurate or misleading statements on a matter of official

interest," referring to Plaintiff's November 14, 2005 written statement to Defendant

about what Smith had told managers on October 28, 2004, about the reasons for

"movement of managers" in Houston being "due to the settlement of a grievance."[18]

 The burden on Defendant at this stage "is only one of production, not persuasion, and

involves no credibility assessment."  *McCoy*, 492 F.3d at 557.  Defendant's asserted

legitimate, nonretaliatory reasons are adequate to satisfy Defendant's burden.

### 3.    Pretext

Because Defendant has met its burden to articulate legitimate, nonretaliatory

reasons, the burden shifts to Plaintiff to prove that the employer's articulated reason

is not true but instead is a pretext for the real retaliatory purpose.  *McCoy*, 492 F.3d

at 557.  Plaintiff's ultimate burden is to demonstrate that the June 2005 suspension

would not have occurred "but for" Plaintiff's protected activity.  *Strong v. Univ.*

*Healthcare Sys., LLC*, 482 F.3d 802, 806 (5th Cir. 2007).

---

[18]    March 2005 Proposed Notice of Suspension, Exh. D to Defendant's Motion [Doc. # 16], at 1–2.

It appears that Smith and Thomas knew of Plaintiff's 2004 EEO complaint as of August 2004 when the parties engaged in mediation.  Defendant does not deny that Smith (and Thomas) knew of Plaintiff's filing her formal EEO complaint.[19]  Plaintiff argues that Defendant's "actions and stated reasons [for her June 2005 suspension] are inconsistent and their truthfulness is in dispute" and that this alone is sufficient to establish pretext.[20]  Plaintiff has presented sworn statements from other managers[21] contradicting Smith's version of the facts.  These declarations raise a genuine fact issue about what Smith said at the October 26, 2004 meeting about the reasons for the manager reassignments, and whether Plaintiff's conduct in discussing the matter with complainant Moore was contrary to Smith's instructions, the basis for the June 2005 suspension.  Plaintiff accordingly has raised a genuine material fact issue as to the veracity of some of Defendant's nonretaliatory reasons for the suspension.  There is an issue of what Smith stated at various meetings and whether, when Plaintiff spoke to Moore, she in fact failed to follow a managerial directive not to speak to Moore. It is noted that certain others of Defendant's stated bases for the suspension have not

---

[19]   This knowledge alone, however, is insufficient to establish the required "but for" causation.  *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

[20]   Plaintiff's Response [Doc. # 20], at 14.

[21]   *See* Statement of Gloria Torres, Plaintiff's Response [Doc. # 20-10], at 1–2; Statement of John McWhorter, Plaintiff's Response [Doc. # 20-11], at 1; Statement of Brenda Scott, Plaintiff's Response [Doc. # 20-12], at 1.

been contradicted.  For instance, Plaintiff testified that she had in fact responded "no comment" to Smith's request for a written response to the union's allegations regarding Moore's grievance, and thus could be deemed insubordinate.[22]

The Court must consider other evidence Plaintiff has adduced in this summary judgment record.  To show that Smith acted with retaliatory motivation in recommending the June 2005 suspension, Plaintiff described incidents suggesting that Smith's treatment of her deteriorated after Plaintiff filed the EEO complaint.  Much of this conduct was in October 2004, shortly after the mediation on Plaintiff's complaint and the very month Plaintiff filed the formal 2004 EEO complaint.  For instance, Plaintiff points to Smith's criticisms of her (as compared to prior compliments of Plaintiff's work and reliance on her judgment), cessation of face-to-face communications, a poor performance review, failure to inform Plaintiff of new ways to appeal a negative performance evaluation, denial of an annual leave request, and unspecified failures to communicate management procedures to Plaintiff for her team.

Considering the evidence as a whole, the Court concludes that Plaintiff has established a conflict in substantial evidence on the ultimate issue of pretext and thus has established that summary judgment on her retaliation claim is not warranted.  *See*

---

[22]     Evidentiary Hearing Transcript, Exh. A to Defendant's Motion [Doc. # 16], at 96.

*Sherrod*, 132 F.3d at 1122 (internal citations omitted).  Defendant's motion for summary judgment on Plaintiff's retaliation claim relating to her June 2005 suspension is denied.

### B.    Plaintiff's Hostile Work Environment Claim

Defendant also moves for summary judgment on Plaintiff's hostile work environment claim.  Plaintiff's Complaint alleges that "[t]he effect of Defendant's actions, as alleged [in the Complaint], was based on Plaintiff's race, black, and had the effect of unreasonably interfering with Plaintiff's work performance and/or creating and intimidating, hostile or offensive work environment in violation of violation [sic] of Title VII."[23]  As a threshold matter, Plaintiff has expressly abandoned her race discrimination claim.[24]  Therefore, to the extent Plaintiff's hostile work environment claim is based on Plaintiff's allegations of racial discrimination, the hostile work environment claim has been abandoned.  However, to the extent Plaintiff's hostile work environment claim rests on a separate basis, the Court addresses the merits of the claim.

A party may establish a violation of Title VII by proving that severe, pervasive harassment created a hostile work environment.  *See Meritor Sav. Bank, FSB v.*

---

[23]     Plaintiff's Complaint [Doc. # 1], ¶ 29.

[24]     Plaintiff's Response [Doc. # 20], at 6.

*Vinson*, 477 U.S. 57, 66 (1986); *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999).  "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive."  *Equal Employment Opportunity Comm'n v. WC & M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

Defendant argues that Plaintiff's supervisors' alleged actions are not so severe or extreme that they constitute a violation of Title VII.  This satisfies Defendant's initial burden to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Reyna*, 401 F.3d at 349.  Plaintiff has failed to make any argument in response to Defendant's motion on this issue.  Plaintiff has plainly failed to meet its burden to go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *See Littlefield*, 268 F.3d at 282.  In the absence of proof, the Court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075.

Alternatively, the Court concludes that Plaintiff has not presented evidence that the conduct of which she complains was sufficiently severe or pervasive to meet the Fifth Circuit's standard of proof for a stand-alone hostile work environment claim. As a further alternative, Plaintiff does not establish what the alleged motive—other than race or retaliation for her 2004 EEO activity—was for conduct by Defendant that

she alleges constituted a hostile work environment.  To the extent the motive allegedly was her race, Plaintiff has abandoned a race discrimination claim and there is no evidence in the record to support a race-based a hostile work environment claim.  To the extent the alleged motive was retaliation, the hostile work environment theory is subsumed by the retaliation claim and is governed by the rulings above.  Finally, Plaintiff has not administratively exhausted any stand-alone hostile work environment claim.  *See* note 15, *supra,* at 13.  For the foregoing reasons, Defendant's Motion is granted on Plaintiff's hostile work environment claim.

## V.   **CONCLUSION**

Based on the foregoing, the Court concludes that Plaintiff adequately exhausted her administrative remedies on her retaliation claim regarding her June 2005 suspension.  Plaintiff has established a genuine question of material fact and summary judgment is not warranted on that claim.  However, Plaintiff has failed to establish a genuine issue of material fact on her hostile work environment claim.  Summary judgment will be granted on that theory.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion [Doc. # 16] is **GRANTED in part** and **DENIED in part** in accordance with this Memorandum and Order.

SIGNED at Houston, Texas, this 3rd day of **September, 2009**.

Nancy F. Atlas
United States District Judge